**In re Rodney D. JEROME and Carol A. Jerome, Debtors.**

**Bankruptcy No. 82–230.**

United States Bankruptcy Court, D. Vermont.

June 17, 1983.

David D. Robinson, Rutland, Va., trustee, pro se.

Gregory P. Howe, Newport, Vt., for Caledonia Nat. Bank of Danville.

John A. Kelley, Middlebury, Vt., for debtor.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

The objection of the Trustee to the allowance of the claim of Caledonia National Bank of Danville filed April 19, 1983 came on for hearing, after notice, with the following appearances:

## FACTS

Rodney D. Jerome and Carol A. Jerome filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on October 12, 1982, they having done business previously as "TRIPLE J. FARM". They listed their address at the time of filing as RD # 1, Whiting, Vermont 05778. In their schedules they listed Caledonia National Bank, Danville, Vermont as a secured creditor in the sum of $59,550.00 which represented the balance of borrowed money to purchase 33 cows and indicated that the

UCC Financing Statement was filed in Shoreham, Vermont.

On November 13, 1982 Caledonia National Bank of Danville filed a secured claim showing a sum due of $60,401.45 as of October 29, 1982 with a per diem of $23.44. In the proof of claim the creditor alleged that its security interest was perfected by the required filings and otherwise in accordance with the law and it attached copies of financing statements to the proof.

On June 4, 1981 the Debtor, for value received, executed and delivered to Noel Lussier a promissory note in the principal sum of $63,500.00 payable with interest at the rate of 2% in excess of the minimum commercial lending rate in effect at the Shawmut Bank of Boston, N.A. and payable in monthly installments of $1,507.22 beginning August 1, 1981. As security for the payment of this note the Debtors executed and delivered to Noel Lussier a security agreement dated June 4, 1981 under which they granted to Lussier a security interest in certain cattle and farming equipment described in the schedules at the end of the security agreement. The interest of Lussier in the note and in the security interest was assigned by him to the Caledonia National Bank of Danville. The address of the Debtors was recited on the note and in the security agreement as "RFD, Shoreham, Vermont 05770."

On June 16, 1981 financing statements were filed in the Office of the Town Clerk of Shoreham, Vermont and of the Secretary of State with Rodney Jerome and Carol Jerome described as Debtors, Neal Lussier as secured party and the Caledonia National Bank of Danville as assignee of the secured party. The financing statements made reference to the collateral described in the security agreement of June 4, 1981 as being the property covered, including all increases, substitutions and all after acquired property of the same kind as described in the security agreement.

At the time that the Debtors signed the security agreement they lived in the Town of Whiting, Vermont, although they had previously lived in Shoreham, Vermont.

They did not represent to Lussier that they lived in Shoreham, Vermont when the security agreement was executed and, as a matter of fact, it was signed at their home in Whiting, Vermont and at the time the Debtors did not notice that their address had been stated on the agreement as Shoreham, Vermont.

Subsequently the Debtors received communications from the bank and Lussier, concerning the indebtedness addressed to their residence in Whiting, Vermont, including a request for payment by Noel Lussier dated June 24, 1982 for the November, 1981 and the June, 1982 installments of $1,507.22 each. This request was enclosed in an envelope addressed to Mr. Rodney Jerome, Whiting, Vermont 05778 with the return on the envelope showing that it was from Noel Lussier, Hardwick, Vermont 05843.

One of the creditors of the Debtors is Roger Fuels, Inc. whose President, Arthur W. Sears, delivered fuel to the Debtors prior to June 4, 1981 and as a creditor had no knowledge of the security interest of Lussier assigned to the Caledonia National Bank and of the filing of any financing statements.

## DISCUSSION

The Caledonia Bank as assignee of Lussier did acquire a security interest in the personal property described in the security agreement. Under the U.C.C. a security interest in collateral attaches when there is an agreement that it attach and value is given and the debtor has rights in the collateral. 9A V.S.A. § 9–204(1). However, if the Bank is to overcome the trustee's objection to its secured claim it must also establish that its security interest is perfected. This is accomplished by a showing that financing statements were filed in proper places.

In the instant case the collateral consisted of farm products [this includes livestock— 9A V.S.A. § 9–109(3)] and equipment used in farming operations. With this type of collateral perfection of the security interest occurs upon the filing of financing state-

ment in the office of the town clerk in the town of the debtor's residence. 9A V.S.A. § 9–401(1)(a). The evidence is uncontradicted that at the time of the execution of the security agreement and the filing of the financing statements, the debtors resided in the Town of Whiting, Vermont. Since no financing statement was filed in the office of the Town Clerk of Whiting, Lussier failed to perfect his security interest and, because of this failure, the bank as Lussier's assignee holds an unperfected security interest which is subordinate to the rights of a lien creditor and a trustee in bankruptcy from the date of the filing of the petition. See V.S.A. Sec. 9–301(1) and Sec. 9–301(3) which, subject to an exception not here relevant, read as follows:

"Except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of * * * (b) A person who becomes a lien creditor without knowledge of the security interest and before it is perfected; * * * (3) A 'lien creditor' means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes an assignee for the benefit of creditors from the time of assignment, and a trustee in bankruptcy from the date of the filing of the petition or a receiver in equity from the time of appointment. Unless all the creditors represented had knowledge of the security interest such a representative of creditors is a lien creditor without knowledge even though he personally has knowledge of the security interest." Underscoring supplied.

In the instant case it has been established that at least one creditor, Roger Fuels, Inc., had no knowledge of the security interest of Lussier, assigned to the bank, and, as a result the trustee as of the date of the filing of the petition by the debtor became a lien creditor without knowledge.

The trustee's position is buttressed by § 544(a) of the Bankruptcy Code which gives the trustee, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of a judicial lien creditor, a creditor holding an execution returned unsatisfied, and a bona fide purchaser of real property from the debtor.

The forerunner of § 544 was 70c of the Bankruptcy Act known as the "STRONG ARM CLAUSE" under which the trustee as of the date of bankruptcy became a judicial lien creditor whether or not such a creditor existed. Collier points out the broader language of § 544(a) as follows:

"If the description of the trustee's position under former Section 70c was apt, it is even more so under the broader language of section 544(a). It is evident that this hypothetical status depends for meaning upon a substantive law that is not explicitly indicated but that is incorporated by reference. Therefore, the trustee's powers, in every case governed by section 544(a), are those which the state law would allow to a supposed or hypothetical creditor of the debtor who, as of the commencement of the case, had completed the legal (or equitable) processes for perfection of a lien upon all property available for the satisfaction of his claim against the debtor." 4 Collier 15th Ed. § 544.02, page 544–5.

It has been consistently held that a security interest in the bankrupt's property is not perfected and is subordinate to the rights of a trustee in bankruptcy where the financing statement was filed in the wrong place. *In Re Baker,* 4 U.C.C.Rep. 723 (Ref. in Bankruptcy, E.D.Wis.1967); *In Re Scholl,* 6 U.C.C.Rep. 1116 (Ref. in Bankruptcy, W.D. Wis.1969). *In Re Roy,* 21 U.C.C.Rep. 325 (Ref. in Bankruptcy-N.D.Ala.1977); *In Re Pelletier,* 5 U.C.C.Rep. 327 (Ref. in Bankruptcy-1968). For cases in accord and decided by this Court soon after the enactment of the Code in this state see *In Re McQuaide,* 5 U.C.C.Rep. 802 (1968) aff'd 6 U.C.C.Rep. 419 (D.C.D.Vt.1969). *In Re B & B Concrete, Inc.,* 9 U.C.C.Rep. 936 (1971) aff'd 10 U.C.C.Rep. 1282 (D.C.D.Vt.1971). And even if the secured party has been misled by the bankrupt as to his address it would not excuse the failure to file in the office designated by the Code since the secured party has the duty to acquaint himself with the necessary operative facts that

will satisfy at least the minimum filing requirements. *In Re Flynu,* (Ref. in Bankruptcy-E.D.Mich.1969) 6 U.C.C., Rep. 1119. The same result obtains where the filing was made in the county of the post office address of the debtor rather than in the county of his actual residence as required by the U.C.C. *In Re Hyde,* 6 U.C.C. 979 (Ref. in Bankruptcy-W.D.Mich.1969).

In sum the Trustee's position is well founded.

### ORDER

Upon the foregoing, IT IS ORDERED:

1. The trustee's objection to the allowance of the bank's claim as SECURED is SUSTAINED.

2. The claim of Caledonia National Bank of Danville shall be allowed as UNSECURED in the sum of $60,401.45 in the general order allowing claims.