**In re KORS, INC., Debtor.**

**David D. ROBINSON, Esq., Trustee,**

**v.**

**THE HOWARD BANK, Rutland Industrial Development Corp., Small Business Investment Corporation of Vermont, Inc.**

**Civ. A. No. 89–52.**

United States District Court,
D. Vermont.

July 17, 1989.

William C. Dagger, Richard A. Hull, Hull, Webber, Reis & Canney, Rutland, Vt., for Howard Bank.

Andrew R. Field, Montpelier, Vt., for Small Business Inv. Corp. of Vt.

## MEMORANDUM OF DECISION

### (Kors II)

HOLDEN, Senior District Judge.

This appeal by The Howard Bank (the Bank) is from an order entered November 4, 1988 by the bankruptcy court which denied the appellant's motion to revise the Judgment Order entered on June 21, 1985 by Bankruptcy Judge Charles J. Marro. *Robinson v. Howard Bank (In re Kors, Inc.)*, 50 B.R. 874 (Bankr.D.Vt.1985), *aff'd in part, rev'd in part*, 64 B.R. 163 (D.Vt. 1986), *aff'd*, 819 F.2d 19 (2d Cir.1987) [hereinafter *Kors I*]. Since this is a second appeal, it will be referred to as *Kors II*.

After conducting an evidentiary hearing, the bankruptcy judge filed a memorandum opinion that set forth findings of fact and conclusions of law pursuant to Fed.R.Civ.P.

52, made applicable to adversary proceedings by Bankr.Rule 7052.

It was further ordered that the appellant pay the appellee, Small Business Investment Corporation of Vermont (SBIC), the sum of $184,000, with interest, for the total amount of $346,060.00; thereafter interest of $68.06 until date of payment was ordered. The antecedent substantive and procedural facts are fully set forth in the reported cases in *Kors I*. They will not be repeated here except where relevant to the questions sought to be reviewed in the present appeal. The additional facts found in Judge Marro's opinion of November 1988 are not disputed; only the legal conclusions and consequences are challenged.

Since the appeal in *Kors I*, the ownership interests of the appellees, Small Business Investment Corporation of Vermont, Inc. (SBIC) and Rutland Industrial Development Corporation (RIDC), the local development corporations, have been acquired by the United States Small Business Administration. Apparently, consistent with an arrangement between these lenders, their interests are represented by SBIC in this appeal and will be so indicated.

The additional findings by the bankruptcy judge report that the proceeds of the trustee's sale of the debtor's property on April 11, 1982, in the total amount of $1,100,000, have been deposited in The Howard Bank by the trustee. The sale was made by the trustee with the consent of the parties and pursuant to a court order. *Kors I*, 819 F.2d at 22. The purchase by Hilinex–Himolene was financed by The Howard Bank since the parties further agreed "that the Bank could, as part of the sale to Hilinex retire $1,000,000.00 of RIDC's indebtedness....." *Kors I*, 50 B.R. at 884; *see also* Memorandum Opinion on Motion to Revise Judgment Order Dated June 21, 1985, at 2, No. 80–00255 (Bankr.D.Vt. Nov. 4, 1988). As a consequence of this arrangement, the bankruptcy court further determined that "The Howard Bank shall not be chargeable with interest." *Id.* 50 B.R. at 884. In keeping with this undertaking, the third paragraph of the court's order of June 21st directed the Bank to pay

to the trustee "the sum of One Million Dollars ($1,000,000.00) ... less such amounts as are paid to Small Business Investment Corporation of Vermont, Inc., as hereinabove shown."[1]

The memorandum opinion entered November 4, 1988 by the bankruptcy judge concluded:

> SBIC and Howard did reach an agreement as to the fair market value of items of personal property which was to be deducted from the sums of $210,000.00 and $3,324.00 Ordered [sic] paid by Howard to SBIC under paragraph "2", subparagraphs "A" and "B", as well as the fair market value of the "miscellaneous items conveyed" under sub-paragraph "C". As a result, they have stipulated that the total principal sum payable from Howard to SBIC is $184,000.00. By virtue of this agreement, the Judgment of June 21, 1985, as it relates to Howard and SBIC, has been translated, in simple terms, into a mandate requiring Howard to pay SBIC the sum of $184,000.00 plus interest at the rate of 13.5% per annum from April 22, 1982 until the date of payment.

Memorandum Opinion on Motion to Revise Judgment Order Dated June 21, 1985 at 5, *Kors II*, No. 80–00255 (Bankr.D.Vt. Nov. 4, 1988).

The correctness of this conclusion of the bankruptcy judge is the centerpiece of this appeal. It appears in the first question presented in the appellant's statement of issues to be presented, required by Bankruptcy Rule 8006.[2] As shown in the mar-

---

[1] IT IS ORDERED AND ADJUDGED:

1. The security interest of The Howard Bank is hereby avoided and its claim shall be allowed as unsecured in these proceedings.

2. The Howard Bank shall pay to Small Business Investment Corporation of Vermont, Inc., the following:

(A) $210,000.00 less the fair market value as of April 22, 1982 of the drives on the embosser units, of the air compressor, and of the HBS 500, HPS 500 (Limo Units) and of HVS 500 (punch) plus interest on the resultant amount at the rate of 13.5% per annum from April 22, 1982 until the date of payment.

(B) $3,324.00 plus interest at 13.5% per annum from April 22, 1982.

(C) The fair market value as of April 22, 1982 of such 'miscellaneous items conveyed' by the Trustee as were machinery or equipment plus interest at 13.5% per annum from April 22, 1982.

3. The Howard Bank shall pay to the Trustee, David D. Robinson, Esquire, the sum of One Million Dollars ($1,000,000.00) less such amounts as are paid to Small Business Investment Corporation of Vermont, Inc., as hereinabove shown.

4. Such sums as are on deposit in the interest-bearing escrow account established in connection with the Trustee's sale to Hilinex-Himolene shall be transferred to the official account of the Trustee for the benefit of the estate of the Debtor.

5. The fair market value of the drives on the embosser units of the "sundry equipment" of pieces designated HBS 500, HPS 500 (Lemo [sic] units) and HVS 500 (punch) and air compressor, and of the "miscellaneous items" conveyed [sic] shall be established by the parties and in the event that they fail to do so the Court shall schedule a hearing for the purpose of determining such market value.

---

Dated at Rutland, Vermont, June 21, 1985. Judgment, *Robinson v. Howard Bank (In re Kors, Inc.)*, 50 B.R. 874 (Bankr.D.Vt.1985).

[2] 1. Whether the Judgment of June 21, 1985, ordering payment to Small Business Investment Corporation of Vermont, Inc. out of the proceeds of the sale, in effect charging such payment against the Trustee, was final and binding as to The Howard Bank prior to the exhaustion of the appeal process, which determined that The Howard Bank is entitled to a pro-rata share of such proceeds, as a co-equal with Small Business Investment Corporation of Vermont, Inc. by virtue of the Subordination Agreement, and deprived the Trustee of any rights to the proceeds.

2. Whether the Bankruptcy Court erred in denying The Howard Bank further proceedings on the issue of the amount due as between Small Business Investment Corporation of Vermont, Inc., and The Howard Bank out of the proceeds of the sale of the collateral.

3. Whether the Bankruptcy Court erred in failing to revise the Judgment to provide that The Howard Bank and Small Business Investment Corporation of Vermont, Inc. share proportionately in the proceeds of the sale of the collateral, including the income actually derived from the proceeds.

4. Whether Small Business Investment Corporation of Vermont, Inc., and The Howard Bank as a matter of law and equity, ought to be required to share pro-rata in the common fund.

5. Whether the November 4, 1988, Order of the Bankruptcy Court fails to comply with the mandate of the United States District Court Order of remand for further proceedings consistent with its opinion and as the present circumstances of the case require.

gin, the Bank's statement of issues seeks to engraft additional equitable considerations. The thrust of the remaining questions urged by the Bank seems to be that the interest rate of 13.5%, computed and imposed in the second provision of the June 21, 1985 order (in *Kors I*), results in an unjust apportionment of the proceeds of the sale "unless both can receive 13.5% on their respective shares of the asset pool."

The bankruptcy court's opinion correctly points out that on July 1, 1985 the Bank filed a motion to amend the findings and judgment that was entered on June 21, 1985 "to eliminate the provision of interest at 13.5% per annum to SBIC...." Motion to Amend Findings and to Amend Judgment, at 6, *Kors I* (Bankr.D.Vt. July 1, 1985). The motion was heard on notice to all interested parties. After written and oral arguments, the motion was denied on July 24, 1985. The Bank's timely appeal was filed on August 2, 1985; it was directed only to paragraph one of the order of June 21, 1985, as amended. No appeal was undertaken to challenge that part of the judgment which obligated the appellant "Howard to make sundry payments to SBIC which now have, by agreement, been reduced to one payment of $184,000.00 plus interest at 13.5% from April 22, 1982 to date of payment." [3] Memorandum Opinion on Motion to Revise Judgment Order Dated June 21, 1985, at 6, *Kors II* (Bankr.D.Vt. Nov. 4, 1988).

The bankruptcy court's opinion concluded that the Bank's first motion to amend the judgment of June 21, 1985 prior to its notice of appeal in *Kors I,* was decided with finality by the amending order of July 24, 1985.

In this second effort to amend the same provision, the bankruptcy court determined that the instant motion for revision does not satisfy the time constraints of rules 59

and 60 of the *Federal Rules of Civil Procedure* as applied to cases under the Bankruptcy Code by Bankr.Rules 9023 and 9024. The court refused to revise that part of the order which established SBIC's entitlement to principal and interest due from the Bank, as directed in the second paragraph to the judgment order. The bankruptcy court concluded that the present motion for revision is without merit and directed the entry of an appropriate order for payment by the Bank to SBIC the sum of $184,000 plus interest at 13.5% from April 22, 1982 to date of payment. In this appeal which followed, the Bank does not question the amount of $184,000 now due; only the interest at 13.5% that has accrued since the trustee's sale is challenged.

### Discussion

The Bank makes no argument or justification for its failure to comply with the time constraints imposed by rules 59 and 60 as applied in bankruptcy proceedings by rules 9023 and 9024 of the *Bankruptcy Rules.* The appellant contends in this court that the rules do not apply. It refers to the present 1988 request for revision as a motion to compel the bankruptcy court to comply with the mandate of this court, as affirmed by the court of appeals in *Kors I.* The Bank seeks to be relieved from compliance with payments of interest at the rate imposed by paragraph 2 of the judgment, under the mistaken notion that the order of this court "transformed the legal relationships between SBIC and Howard to a position of equality of entitlement to the sale proceeds of the collateral of the debtor...." Brief of Appellant Howard Bank at 10, *Kors II* (filed Mar. 8, 1989).

In the first appeal (*Kors I*), the single question presented for review in this court was the force and effect of the subordina-

---

Designation of Items and Statement of Issues at 2–3, *Robinson v. Howard Bank (In re Kors, Inc.)* No. 80–0025 (Bankr.Vt. filed Feb. 6, 1989).

**3.** The amounts to be paid to SBIC, referred to in this part of the order, were geared to the fair market value as of April 22, 1982 of the "sundry equipment and miscellaneous items conveyed" by the trustee to Hilinex. This segment of

SBIC's collateral represented particular machinery and accessories that were not purchased from Rextrusion by RDIC for the benefit of Kors. It appears that from the security interest derived from working capital loaned by SBIC was not included in the Bank's collateral, but was protected by SBIC's perfected security interest.

tion agreement. The district court reversed that part of the judgment which nullified the Bank's subordination agreement for the benefit of the bankruptcy estate. In all other respects the amended judgment, including SBIC's entitlement to the principal and interest payments ordered in the second paragraph of the judgment, was affirmed. *Kors I*, 64 B.R. at 170 (D.Vt.), *aff'd*, 819 F.2d at 22.

Although the Bank's security interest in the Rextrusion equipment was never perfected, the appellant now contends it is entitled to share proportionately with SBIC, not only in the proceeds of the sale of the collateral, but also in the income actually derived from the proceeds that have accrued since the date of sale on April 22, 1982. That was the date when the $1,100,000.00 was deposited in the various accounts maintained by the trustee in the Howard Bank. The bankruptcy court's conclusion that the Bank's present position is without merit must be sustained.

The appellant, in pressing the contention that it should share proportionately with SBIC in the interest accrued from the proceeds of the sale, recognizes that the principal amount of the SBIC claim, referred to in paragraph 2(A) and paragraph 3 of the 1985 judgment, represents an "amount [of SBIC's collateral] not subordinated to Howard which is now agreed to be $184,-000.00." Brief of Appellant Howard Bank at 7, 10, *Kors II*, No. 89–52 (D.Vt. filed Mar. 8, 1989). To the extent that it seeks to revitalize its imperfect security interest in the collateral by way of the subordination agreement, the Bank ignores the opinion by Judge Pierce for the court of appeals that "the Bank's rights with respect to its unperfected security interest on Kors' collateral were separate and distinct from its rights under the subordination agreement among the lenders." *Kors I*, 819 F.2d at 24 (2d Cir.).

More importantly, the Bank's novel posture in this second review in the district court would obliterate the special precepts of finality that govern appeals in bankruptcy.

Under 28 U.S.C. § 158(a), district courts have jurisdiction to hear appeals from final orders of the bankruptcy courts. Because bankruptcy proceedings often continue for long periods of time, and discrete claims are often resolved at various times over the course of the proceedings, the concept of finality that has developed in bankruptcy matters is more flexible than in ordinary civil litigation. See *In re Johns–Manville Corp.*, 824 F.2d 176, 179–80 (2d Cir.1987). Some appeals are therefore allowed before the entire bankruptcy is resolved. Of course, not every order of a bankruptcy court is appealable as a final order—only those orders that "finally dispose of *discrete disputes within the larger case*" satisfy the test. *In re Saco Local Development Corp.*, 711 F.2d 441, 444 (1st Cir.1983) (emphasis in original); see also *In re Stable Mews Associates*, 778 F.2d 121, 122 (2d Cir.1985).

*In re Chateaugay Corp.*, 880 F.2d 1509, 1511 (2d Cir.1989).

That part of the judgment order of the bankruptcy court as amended which undertook to avoid the subordination agreement was appealed as a final order. The second paragraph of the same order which allocated that part of the collateral not subordinated to the Bank according to the fair market value of miscellaneous and sundry machinery equipment as of the date of sale on April 22, 1985, plus interest on the resultant amount from that date, constituted a separate and discrete dispute within the teaching of *Chateaugay* and *Saco Local Development Corp.*

Although SBIC's entitlement left open the precise amount of the fair market value of the unsubordinated equipment and accessions, the ingredients of finality were present and have been previously fixed by agreement, as the bankruptcy order contemplated. The disposition of SBIC's claim became "final" within the meaning of 28 U.S.C. § 158(a). *See In re Morse Elec. Co., Inc.*, 805 F.2d 262, 264 (7th Cir.1986). Since the Bank elected not to appeal under section 158(a), SBIC's entitlement to its unsubordinated interest in the collateral proceeds of $184,000 with interest at 13.5% to

the date of payment, the question is not open for review under the pretext of a motion to revise a judgment order that was entered and final under Bankruptcy Rule 9021 in 1985. The Bank could have appealed the decision of the bankruptcy court as expressed in the second paragraph of the judgment in 1985, at the time it presented the subordination agreement for review; now it is more than three years too late. *Cf. Reichman v. United States Fire Ins. Co. (In re Kilgus),* 811 F.2d 1112, 1116 (7th Cir.1987) ("final" order must be appealed forthwith; a collateral final order may be appealed at the end of the bankruptcy case).

The district court, after reversing that part of the judgment order which avoided the subordination agreement, as noted earlier, affirmed in all other respects the judgment as amended, whereupon it remanded the cause for further proceedings "as the present circumstances of the case require." *Kors I,* 64 B.R. at 170 (D.Vt.). Remand was ordered by this court on July 18, 1986. Had the Bank then made the payments to SBIC from April 22, 1982 at the rate of 13.5% as ordered by Judge Marro, it would have eliminated the disparate and declining rates which seem to be the source of its present grievance in *Kors II.* If so, the harm is of the appellant's own making.

In other aspects, the delay in compliance has, in some respects, worked to the advantage of the Bank. The Bank was relieved from the payment of $1,000,000 to the Trustee, interest free, by the arrangement for financing the sale by the trustee to Hilinex from the proceeds. The appellant concedes: "The 'loan' of Howard to the purchaser (Hilinex) of the assets of the debtor (Kors) carried an interest rate of 13% per annum on the unpaid balance." Brief of Appellant Howard Bank at 1, *Kors II* (filed Mar. 8, 1989). The Bank's argument that it should be released from the interest due SBIC because of the declining rate of interest in the money market at large since 1982 is rejected. The request that the declining market rate be substituted for the 13.5% rate directed to be paid by the bankruptcy court's order of June 21,

1985 at the expense of SBIC is not supported by the facts found and is untenable.

For the reason stated in this memorandum, the decision of the bankruptcy court entered on November 4, 1988, is fully sustained by the record presented in this review. Let the case go forward for final accounting and distribution as directed in the remand ordered by this court on July 18, 1986, and affirmed by the court of appeals, *Kors I,* 819 F.2d at 24.

SO ORDERED.

