## COUNTY OF ORLEANS,

AT THE

### AUGUST TERM, 1863.

---

PRESENT:

Hon. ASA O. ALDIS,
Hon. JAMES BARRETT,
Hon. LOYAL C. KELLOGG,      } *Assistant Judges.*
Hon. ASAHEL PECK,

---

## JOHN W. MASON *v.* JOHN GRAY.[*]

*Mortgage. Possession. Estoppel. Declarations.*

A. mortgaged his premises to the defendant to secure certain notes, and afterwards deeded the same to the plaintiff, with notice of the mortgage and of condition broken. K. entered into possession of these premises as tenant in May, under two independent contracts—one with the plaintiff, the other with the defendant, but neither the plaintiff nor the defendant knew of K's contract with the other until the next December. K. had notice that the defendant claimed rents and profits under his mortgage, and the plaintiff knew that K. had this notice. *Held,* that the possession of the tenant K. was at law that of the defendant.

A mortgagee sought to recover the mortgage debt by trustee process, but the officer who served the writ, attached the mortgaged premises without authority. The suit was entered in court, and no disclaimer of 'the

---

[*]This cause was submitted on the papers and briefs at the August Term, 1862. At the present term, the opinion of the court was delivered by KELLOGG, J.

unauthorized act of the officer was made. *Held*, that in view of an express finding by the court that the suit was prosecuted merely to hold the trustee, and not with the intention of holding the premises on the attachment, the mortgagee will not be estopped from asserting his right of entry on the premises under his mortgage.

Evidence is not admissible to show that a party was a general agent of the defendant about the matter in suit, in order to prove the agent's declarations, where it does not appear that his declarations were connected with any act of agency.

TRESPASS to recover for ten tons of hay. Plea, the general issue. Trial by court, June Term, 1861, PECK, J., presiding.

The facts in the case are fully stated in the opinion of the court.

Judgment for the defendant,—exceptions by the plaintiff.

*Child & Benton*, for the plaintiff.

*Powers & Gleed* and *Edwards & Stewart*, for the defendant.

The premises on which the hay in question grew, were conveyed to the plaintiff after the condition or law day in defendant's mortgage had passed. The plaintiff's title and rights are subject to every circumstance of defendant's mortgage. The plaintiff stands exactly in the shoes of the mortgagor. *Steadman* v. *Gassett*, 18 Vt. 346; *Keech* v. *Hall*, Doug. 21; *Moss* v. *Gallimore*, Doug. 279; *Fisher* v. *Giles*, 5 Bing. 421; Law Reporter, August 1860, p. 189.

The defendant by his contract with Kelly, as well as his notice to Kelly and his former notice to Pennock, took actual possession of the premises as in law he might well do, and a new tenancy was thereby created. *Steadman* v. *Gassett*, 18 Vt. 346; 5 N. & M. 672, and cases above; *Mayo* v. *Fletcher*, 14 Pick. 530; *Newall* v. *Wright*, 3 Mass. 138; *Moss* v. *Gallimore, supra*. The defendant having taken possession of the premises, the crops grown thereon belonged to him, and he had a right to treat the mortgagor and all acting under him as trespassers. *Johnson's Adm'r* v. *McGuire*, 4 Vt. 327; *Lull* v. *Mathews*, 19 Vt. 323; *Moss* v. *Gallimore*, Doug. 279. The

Mason *v.* Gray.

attachment made on the defendant's writ of the same premises has no effect upon the defendant's right to hold the premises under the mortgage—in fact the attachment of the premises was not known to the defendant, but he at all times held them by virtue of the mortgage. *Wilson* v. *Hooper et al.* 13 Vt. 653; *Child & Benton* v. *Allen,* 33 Vt. 476. The court properly excluded the declarations of Wing. *Cooley & Wife* v. *Norton,* 4 Cush. 93; 1 Phillips Ev. 513; *Langham* v. *Allmets,* 4 Taunton 511.

KELLOGG, J. The principal question in this case is whether the possession of the tenant Kelley of the premises mortgaged to the defendant is to be considered as being at law the possession of the plaintiff or of the defendant. Each party claims title to the premises under Lorenzo S. Gates,—the plaintiff by a deed from said Gates to himself dated April 23d, 1859, and the defendant by a mortgage deed dated March 24th, 1859, and recorded on the day following its date, by which the premises were conveyed to him to secure the payment of certain notes which Gates had previously executed to him. The law day on this mortgage had expired before the plaintiff took his deed from Gates, and the mortgage debt has never been paid. When the plaintiff took his deed, one Pennock was in possession of the premises as a tenant, and, on the same day, the plaintiff agreed with Pennock to hold the premises under and for him. On the 5th of May, 1859, Pennock being then in possession, the defendant left a notice with Pennock's wife at the house on the premises, for Pennock, that he, the defendant claimed possession of the premises and all the rents and profits. Pennock left the premises a few days after the 5th of May, he claiming no right thereto; and Kelley thereupon went into possession, and continued to occupy the same during the remainder of that year.

On the 4th of May, 1859, the plaintiff entered into an agreement with Kelly, by which Kelly agreed to go into possession of the premises, and carry them on for the plaintiff. At some time in May, 1859, which the county court find was prior to the 6th of May, and previous to the time when Kelly went into possession

of the premises, he made another agreement with the defendant by which he took, for the then coming year, the premises of the defendant at the halves according to the usual custom of farmers, each party being entitled to have half of the products of the premises for the then ensuing season, and the said Kelly agreeing to carry on the premises and hold the same under the defendant on these terms. Thus Kelly appears to have undertaken by contract to serve two masters. The plaintiff had notice of the defendant's mortgage before he took his deed; and the defendant gave notice to Kelly, at the time they made the contract above stated, that he claimed the rents and profits of the premises under his mortgage. After the making of this contract, Kelly on three different occasions acknowledged the making of this contract with the defendant, and recognized it as a binding contract, and the defendant never had any notice from Kelly that he was carrying on the premises under a contract with the plaintiff until he, the defendant, went to take the hay which is the subject of this suit in the month of December following. The premises were situated in Wolcott, and the defendant resided at Montpelier, and, during this time, the defendant had no notice or knowledge that Kelly had made any contract with the plaintiff, but supposed that Kelly was carrying on the premises as his, the defendant's tenant. Neither did the plaintiff know that Kelly had made the contract with the defendant, or that he was carrying on the premises for the defendant, until after the defendant took the hay, but he did know, within a few weeks after he make his agreement with Kelly, that the defendant claimed the rents and profits of the premises by virtue of his mortgage, and had given Kelly notice to that effect. The hay taken by the defendant, which is the subject of this suit, was no more than one-half of the hay raised on the premises during that season.

As the plaintiff's title and right was derived from the original mortgagor, it is subject to every circumstance of the defendant's mortgage, for that, being anterior to the plaintiff's deed, is the superior title. After the expiration of the law day on the mortgage, the plaintiff, occupying the position of the mortgagor, is to be considered as a tenant of the mortgagee, and liable to be

evicted by the mortgagee without notice to quit. In *Keech* v. *Hall*, Doug. 21, the rule is laid down that the mortgagor is a mere tenant at sufferance, and is not entitled to notice to quit before an ejectment can be maintained against him; and, in this state, it has been fully decided that the mortgagee may bring ejectment without notice to quit, and in such action may recover the possession of the land, and damages for the use and occupation from the time of notice, or the time of the service of the writ; and this either against the mortgagor or his assignee; and that, after condition broken, he has a right of entry which he may peaceably assert without notice and without an action of ejectment. *Lyman* v. *Mower et al.*, 6 Vt. 345; *Wilson* v. *Hooper et al.*, 13 Vt., 653; *Stedman* v. *Gassett*, 18 Vt. 346. The notice from the defendant to the tenants, Pennock and Kelley, was equivalent to a notice to quit, as was held in *Babcock* v. *Kennedy*, 1 Vt. 462. The defendant by these notices having acquired the right to the future rents and profits, the tenant in possession was no longer liable for the same to the mortgagor; and Kelly having acknowleded the title of the plaintiff by making the contract with him which is above stated, is to be considered as having attorned to the defendant, and thereby became the tenant of the defendant. The act of Kelly in entering upon the possession of the premises after making the contract with the defendant, can be considered only as a taking of the possession for the defendant, and the possession of Kelly is to be referred to that contract and the superior right of the defendant's mortgage, rather than to his contract with the plaintiff who held the subordinate right of the mortgagor.

It appeared that on the 23d of April, 1859, the defendant procured a writ of attachment, claiming to recover the amount of the notes secured by the mortgage, and summoning therein one Nelson Rand as trustee of said Gates, and that the officer who served this writ attached the said mortgaged premises thereon, but did this without any direction to that effect from the defendant or his attorney; and that this writ was duly entered in court, with the officer's return showing his attachment, and without notice to any person of any disclaimer of this unauthorized act

of the officer in attaching the premises, and was pending in court in December 1859. The plaintiff claims that these facts estopped the defendant from asserting his right of entry on the premises under his mortgage, and that his entry of the suit in court was a ratification of the attachment, although it was not originally authorized or directed by him. But we think that in view of an express finding by the court that the suit was prosecuted merely to hold the trustee, and not with the intention of holding the premises on the attachment, that there is no foundation for this claim. The defendant ought not to be prejudiced by the unauthorized act of the officer, and we do not regard the entry of the suit in court for another and distinct purpose as any ratification of that act.

The plaintiff offered to show that Joseph A. Wing, Esq,, was the general agent and attorney of the defendant about the matters in this suit, in order to prove the declarations of the said Wing about the matter. This testimony was excluded by the court on the ground that such declarations would not be evidence; and the plaintiff excepted to this decision. Where the acts of the agent will bind the principal, there, his representations, declarations, and admissions, respecting the subject matter, will also bind him, if made at the same time, and constituting part of the *res gestae*; but the admission or declaration of the agent binds the principal only when it is made during the continuance of the agency, in regard to a transaction then depending; *et dum fervet opus;* and it is because it is a verbal act, and part of the *res gestae*, that it is admissible at all. Story on Agency, §§ 134, 137; 1 Greenl. Ev. § 113. It does not appear that the declarations of the agent which the plaintiff offered to prove were connected with any act of agency, or were made in the course of discharging any duty of the agency; and the plaintiff's offer was too broad and general to justify the admission of the testimony.

These conclusions dispose of all the questions which arise upon the plaintiff's exceptions. We find no error in the decisions of the county court, and the judgment of that court for the defendant is affirmed.