William Rassman and Marie Rassman v. American
Fidelity Company

[460 A.2d 461]

No. 214-81

Present: Billings, C.J., Hill, Underwood and Peck, JJ., and
Larrow, J. (Ret.), Specially Assigned

Opinion Filed April 5, 1983

*Gensburg & Axelrod,* St. Johnsbury, for Plaintiffs-Appellants.

*Robert S. Burke* of *Richard E. Davis Associates, Inc.,* Barre, for Defendant-Appellee.

Hill, J. Plaintiffs, claiming that property owned by them was "burglarized" within the meaning of an insurance policy issued by defendant, their insurance carrier, brought this action to recover their loss. Upon entry of an adverse judgment after trial by court, plaintiffs filed a timely notice of appeal. We affirm.

On January 28, 1977, plaintiffs, owners of a bar and restaurant known as the "Bear Den" in East Burke, Vermont, sold the establishment by warranty deed to one Cherie Slaiby for $45,000. In addition, plaintiffs agreed to sell her the personal property within the premises for $13,000, with title to the personal property to pass when payment of the full $58,000 was made. Slaiby gave plaintiffs a promissory note for $55,000 on which her father, William Slaiby, was co-maker, and cash in the amount of $3,000. William Slaiby also served as manager of the Bear Den. On August 3, 1977, the note being in default, plaintiffs instituted a foreclosure proceeding against Cherie Slaiby.

A short time later, plaintiffs received word that William Slaiby was preparing to remove the personal property from the Bear Den. Concerned about the possible loss of their personal property, as well as the resulting damage which might be inflicted on the Bear Den itself, plaintiffs contacted an

agent of defendant to obtain insurance coverage against such an event. Plaintiffs explained their concerns to the agent and requested theft insurance. They were advised that although theft insurance could not be issued, burglary insurance was available. After being explained the differences between the theft and burglary policies, plaintiffs requested that the Bear Den be covered with burglary insurance.

On September 10, 1977, plaintiffs heard that William Slaiby was planning to "clean out" the Bear Den on the following day. Plaintiffs immediately contacted the chief deputy sheriff of Caledonia County, reviewed the situation with him, and hired the sheriff's office to guard the property. Plaintiffs instructed the department to keep everyone out of the building, and to prevent any attempt to remove the personal property from within. On the following day, William Slaiby and his associates arrived at the Bear Den and demanded admittance to the building. After consulting with his chief deputy, and contrary to plaintiffs' instructions, the deputy sheriff on duty permitted Slaiby and his friends to enter the building and remove most of the personal property. In addition, an extensive amount of damage was inflicted upon the interior of the building.

On appeal, plaintiffs have briefed two issues for review: first, whether the trial court erred when it concluded that the facts failed to establish that a "burglary" as defined by defendant's insurance policy ever took place; and second, whether defendant, through the representations of its agent, should be estopped from denying coverage under the policy. With regard to the latter, we have consistently held that issues not raised in the trial court, even those of constitutional dimension, will not be considered by this Court on appeal. *State* v. *Patnaude*, 140 Vt. 361, 368, 438 A.2d 402, 404 (1981) (citing *State* v. *Prue*, 138 Vt. 331, 331–32, 415 A.2d 234, 234 (1980)). Since the estoppel issue was never raised below, we will not consider it.

With regard to the former, plaintiffs essentially argue as follows. They assert that as a result of the default and the subsequent hiring of the sheriff's department, they owned the Bear Den on September 11, 1977. Since title to the personal property was not to pass to Cherie Slaiby until the promissory

note was paid in full, plaintiffs further assert that William Slaiby's entry onto the premises and removal of personal property was unlawful. Thus, plaintiffs conclude that these acts, coupled with the damage inflicted upon the premises, constituted a "burglary" as defined by defendant's insurance policy. We disagree.

██ The rules for construction of insurance contracts are well settled. "Insurance contracts are 'to be construed according to [their] terms and the evident intent of the parties as gathered from the language used.'" *Simpson* v. *State Mutual Life Assurance Co. of America*, 135 Vt. 554, 555–56, 382 A.2d 198, 199 (1977) (quoting *Utica Mutual Insurance Co.* v. *Central Vermont Railway, Inc.*, 133 Vt. 292, 295, 336 A.2d 200, 203 (1975)). Although the contract is to be strictly construed against the insurer, "[i]f clear and unambiguous, the provisions of the contract must be given force and effect and be taken in their plain, ordinary and popular sense." *Noyes* v. *Commercial Travelers*, 125 Vt. 336, 339, 215 A.2d 495, 497 (1965). Hence, when the key words are defined by the policy in question, our inquiry as to whether a covered event has occurred is limited to the four corners of the policy itself. In this case, the definition of "burglary" is clearly set forth in defendant's policy:

> b. "Burglary" means a felonious abstraction of insured property (1) from within the premises by a person making a felonious entry therein by actual force and violence, of which force and violence there are visible marks made by tools, explosives, electricity, or chemicals upon, or physical damage to, the exterior of the premises at the place of such entry, or . . . (3) from within the premises by a person making a felonious exit therefrom by actual force and violence as evidenced by visible marks made by tools, explosives, electricity, or chemicals upon or physical damage to, the interior of the premises at the place of such exit.

██ In *Kelly* v. *Clement National Bank*, 111 Vt. 65, 10 A.2d 201 (1940), we held that once the condition of a mortgage is broken, "the mortgagee becomes at law the absolute owner of the property and is entitled to immediate possession,

and may, without notice, enter upon the property and take possession thereof, if he can do so peaceably and unresisted." *Id.* at 67, 10 A.2d at 202 (citing *Crahan* v. *Town of Chittenden,* 82 Vt. 410, 415, 74 A. 86, 88 (1909)); *Fuller* v. *Eddy,* 49 Vt. 11, 12 (1876). Simply put, once the condition is broken, the mortgagee possesses a right of entry, *Fuller* v. *Eddy, supra,* 49 Vt. at 13, but until that right is exercised, the mortgagor retains lawful possession of the property.

In this case, plaintiffs did not exercise their right of entry until the day in question, when they stationed the deputies at the Bear Den to protect their interests. Acting as their agents, the deputies, rightly or wrongly, permitted Slaiby to enter and remove the personal property. Such entry was not only not "felonious," but instead was through an unlocked door. There were no visible marks of entry, and any damage to the premises was not shown to be connected with Slaiby's exit. Moreover, plaintiff William Rassman was found to have visited the premises and talked with Slaiby, without trying to stop the removal of the personal property while it was in progress. The trial court correctly concluded that there was no "burglary" within the meaning of the policy.

*Judgment affirmed.*