819 F.2d 19
 16 Bankr.Ct.Dec. 162, Bankr. L. Rep. P 71,814,
3 UCC Rep.Serv.2d 1957
 In re Bankruptcy of KORS, INC. David D. ROBINSON, Trustee,
Plaintiff-Appellant,
v.
The HOWARD BANK, Rutland Industrial Development Corporation,
and Small Business Investment Corporation of
Vermont, Inc., Defendants-Appellees.
 No. 454, Docket 86-5050.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 21, 1986.
Decided May 7, 1987.
 
 Jerome I. Meyers, White River Junction, Vt., for plaintiff-appellant.
 Richard A. Hull, Rutland, Vt. (William C. Dagger, Dick, Hackel & Hull, Rutland, Vt., of counsel), for defendant-appellee Howard Bank.
 James S. Abatiell, Rutland, Vt. (Abatiell & Abatiell, Rutland, Vt., of counsel), for defendant-appellee Rutland Indus. Development Corp.
 Before TIMBERS, VAN GRAAFEILAND, and PIERCE, Circuit Judges.
 PIERCE, Circuit Judge:
 
 
 1
 David D. Robinson, trustee for the bankrupt corporation, Kors, Inc. ("Kors"), appeals from a judgment of the United States District Court for the District of Vermont ordering the proceeds of a sale of the debtor's machinery to be paid in accordance with a subordination agreement among the Rutland Industrial Development Corporation ("RIDC"), the Small Business Investment Corporation of Vermont, Inc. ("SBIC"), and the Howard Bank ("Bank"). Appellant contends that, under Secs. 544 and 551 of the Bankruptcy Code ("Code"), 11 U.S.C. Secs. 544 and 551 (1982), the trustee may avoid a subordination agreement for the benefit of the estate. We disagree.
 
 BACKGROUND
 
 2
 We summarize only the facts believed necessary to an understanding of the issues on appeal. In 1977, Kors entered into negotiations with SBIC, RIDC and the Bank to obtain financing for the operation of a plastics manufacturing business. RIDC, a non-profit local development corporation, agreed to lease equipment to Kors. The Bank agreed to loan funds to Kors and RIDC to purchase the equipment and SBIC agreed to lend Kors working capital.
 
 
 3
 On July 12, 1978, RIDC, Kors, and the Bank executed a security agreement ("Security Agreement"), wherein RIDC proposed the purchase of new equipment and machinery from Rietenhauser USA Sales Corp. ("Rextrusion") which RIDC would lease to Kors.[1] For this purpose, the Bank loaned $1,510,000 to RIDC and Kors as joint debtors. The collateral for the Security Agreement was described as the equipment and machinery to be purchased from Rextrusion by RIDC including "all additions, accessories and substitutions thereto, and all proceeds of their disposition." The Security Agreement required that Kors and RIDC "not permit any other security interest to attach to the Collateral," but acknowledged a subordinate security interest of SBIC, described below, in a loan to Kors of $400,000. On July 13, 1978, the Bank, as secured party, filed financing statements with the Rutland City Clerk and the Vermont Secretary of State, signed only by RIDC, as the debtor, but not by Kors.
 
 
 4
 Earlier, on June 19, 1978, SBIC loaned working capital in the amount of $400,000[2] to Kors pursuant to a loan and security agreement ("Loan and Security Agreement"), wherein Kors agreed to secure its indebtedness to SBIC through its accounts receivable, inventory and all of Kors "machinery, equipment and tangible property of every kind and nature now and hereafter acquired, including all such property as may be leased to [Kors] by Rutland Industrial Development Corporation." However, also contained in this Loan and Security Agreement, which RIDC agreed to execute, was a clause in which SBIC and RIDC agreed to subordinate their respective interests to the Howard Bank, or any other lender financing the purchase by Kors of additional machinery and equipment. Specifically, SBIC and RIDC agreed to be "subject and subordinate to the effect given to any prior security interests therein required to be given to the Howard Bank ... and to subordinate its security interests to any other Lender as may hereinafter finance the purchase by [Kors] of additional machinery and equipment." Apparently, this clause was included to encourage banks to lend Kors funds to promote its production capacity.
 
 
 5
 SBIC filed financing statements for the $400,000 loan to Kors on July 19, 1978. SBIC's financing statements were "subject however to the effect given a previous security interest granted to the Howard Bank."[3] Thus, both the Security Agreement among RIDC, Kors and the Bank, and the Loan and Security Agreement among RIDC, SBIC and Kors identify an obligation by SBIC and RIDC to subordinate their security interests to the Bank's security interest.
 
 
 6
 Kors filed a voluntary bankruptcy petition on November 24, 1980 under Chapter 11 of the Code, which was converted to a Chapter 7 liquidation proceeding on August 14, 1981. The appellant, David D. Robinson, was appointed trustee and on April 22, 1982, with the consent of the parties and pursuant to a court order, the trustee sold all of Kors' equipment for a total of $1,100,000.
 
 
 7
 The bankruptcy court determined, inter alia, that the Bank did not properly perfect its security interest in any collateral; that the trustee, pursuant to Sec. 544 of the Code, preserved the unperfected security interest for the benefit of the estate; and that the estate was subrogated to the Bank's rights under its subordination agreement with SBIC for the benefit of all the creditors of the estate. On appeal to the district court, 64 B.R. 163, the latter reversed so much of the bankruptcy court determination as held that the trustee stood in the position of the Bank with respect to the subordination agreement, and ruled instead that the proceeds of the sale should be distributed in accordance with the subordination agreement. In all other respects, the judgment of the bankruptcy court was affirmed by the district court.
 
 
 8
 On appeal to this court, appellant urges that the rights and powers of the trustee under Secs. 544 and 551 are superior to the rights of parties to a subordination agreement. Appellee argues that Sec. 510(a) of the Code requires that the subordination agreement be enforced among the parties.
 
 
 9
 We affirm the judgment of the district court for the reasons stated below.
 
 DISCUSSION
 
 10
 The issue we must decide herein is whether, pursuant to Secs. 544 and 551 of the Code, the trustee in bankruptcy can obtain rights under a subordination agreement that is authorized by Sec. 510(a) of the Code. Resolution of this issue requires us to examine how these three sections of the Code interact, if at all.
 
 
 11
 Section 544(a) of the Code, the "strong-arm" clause, enables the trustee in bankruptcy to act as a hypothetical lien creditor as of the day the bankruptcy case is filed. Section 544(a)(1) states:
 
 
 12
 The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--
 
 
 13
 (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.
 
 
 14
 11 U.S.C. Sec. 544(a)(1) (Supp. III 1985). Pursuant to this section, the trustee in bankruptcy can avoid unperfected liens on property belonging to the bankruptcy estate. Matter of Chaseley's Foods, Inc., 726 F.2d 303, 307 (7th Cir.1983); White & Summers, Uniform Commercial Code Sec. 24-3, at 996-97 (2d ed. 1980).
 
 
 15
 Once the trustee has assumed the status of a hypothetical lien creditor under Sec. 544(a)(1), state law is used to determine what the lien creditor's priorities and rights are. In re Clifford, 566 F.2d 1023 (5th Cir.1978); In re Gringeri Brothers Transportation Co., 14 B.R. 396 (Bankr.D.Mass.1981); e.g., In re Cushman Bakery, 526 F.2d 23 (1st Cir.1975) (whether security interest has been perfected against trustee in bankruptcy is a question of state law), cert. denied, 425 U.S. 937, 96 S.Ct. 1670, 48 L.Ed.2d 178 (1976). Hence, the bankruptcy court and the district court examined Vermont law to determine what rights the trustee had as a hypothetical lien creditor under Sec. 544(a)(1).
 
 
 16
 The bankruptcy court found, and the district court agreed, that under Vermont law the Howard Bank failed to perfect its security interest in the Kors equipment. Under Article 9 of the Vermont Uniform Commercial Code, a security interest may be perfected by filing a financing statement signed by the debtor. Vt.Stat.Ann. tit. 9A Secs. 9-302, 9-402(1), 9-403 (1966). The failure to identify and obtain the signature of a debtor on a financing statement is fatal to the perfection of the security interest. Id. at Sec. 9-402(2). As owner of the collateral, Kors was the debtor whose signature was necessary on the financing statement for perfection. Indeed, the Bank loaned money for the equipment to Kors and RIDC jointly. Since only RIDC, and not Kors, signed the financing statement, the bankruptcy court found that the Bank did not hold a perfected security interest against Kors in any collateral. 50 B.R. 874, 879 (Bankr.D.Vt.1985). Thus, at the commencement of the bankruptcy case, the Bank had an unperfected security interest in Kors' collateral.
 
 
 17
 Since Vermont law gives a lien creditor rights superior to those of the holder of an unperfected security interest, the trustee, pursuant to Sec. 544(a)(1) of the Code, had rights superior to those of the Bank on the date of the bankruptcy filing. Vt.Stat.Ann. tit. 9A Sec. 9-301(1)(b) (1966); see In re Jerome, 31 Bankr. 266 (Bankr.D.Vt.1983); In re Rutland Tile Center, Inc., 5 U.C.C.Rep.Serv. (Callaghan) 1115 (Bankr.D.Vt.1968); see also A. Cohen, Bankruptcy, Secured Transactions and Other Debtor-Creditor Matters 361 n. 4 (1981) ("The trustee has the status of a creditor with a judicial lien as of the time of the commencement of the bankruptcy case, resulting in the trustee having the power to assert priority in the collateral pursuant to U.C.C. Sec. 9-301(1)(b).")
 
 
 18
 Section 551 of the Code[4] automatically preserves for the benefit of the estate any interest avoided under Sec. 544. "Section 551 ... provide[s] that any transfer of an interest in property avoided under Code Section 544 is preserved for the benefit of the estate." In re Vermont Fiberglass, Inc., 45 B.R. 603 (Bankr.D.Vt.1984). Applying Sec. 551, the bankruptcy court preserved the Bank's unperfected interest for the benefit of the estate. However, the bankruptcy court also held that the Bank's interest in the separate subordination agreement among RIDC, SBIC and the Bank was preserved for the benefit of the estate, putting the trustee in the Bank's shoes with respect to the subordination agreement as well as the Security Agreement. The district court reversed this determination, reasoning that the subordination agreement is not a part of the Bank's unperfected security interest and is not itself a security interest, and therefore the trustee's powers under Sec. 544(a)(1) and Sec. 551 do not extend to the Bank's rights under the subordination agreement.
 
 
 19
 We agree with the district court that the trustee's subrogation powers under Secs. 544(a)(1) and 551 do not extend to a subordination agreement protected by Sec. 510(a) of the Code. While Sec. 544(a)(1) enables the trustee in bankruptcy to step into the shoes of a hypothetical lien creditor to avoid unperfected liens in the debtor's property, he may, pursuant to Sec. 551, preserve only those rights which existed against the bankrupt. In re Gamble, 14 F.2d 847, 848 (W.D.Pa.1926); In re Pribish, 25 B.R. 403, 404 (Bankr.D.Me.1982); In re Appalachian Energy Industries, Inc., 25 B.R. 515, 517 (Bankr.M.D.Tenn.1982). Thus, equipped with lien creditor status under Sec. 544(a)(1) and subrogation power under Sec. 551, the trustee may preserve those rights and powers that a lien creditor would have against the bankrupt under Vermont law. However, Sec. 510(a)[5] enables creditors to subordinate their priorities by agreement if permitted to do so by nonbankruptcy law. In this case, the applicable nonbankruptcy law is Sec. 9-316 of the Vermont Uniform Commercial Code which states:
 
 
 20
 Nothing in this article prevents subordination by agreement by any person entitled to priority.
 
 
 21
 Vt.Stat.Ann. tit. 9A Sec. 9-316 (1966). Such subordination agreements are uniformly upheld by the courts. In re Credit Industrial Corp., 366 F.2d 402, 408-10 (2d Cir.1966) (bankruptcy courts "must enforce lawful subordination agreements according to their terms"); 3 Collier on Bankruptcy p 510.03 (15th ed. 1986); Calligar, Subordination Agreements, 70 Yale L.J. 376, 383-84 (1960).[6]
 
 
 22
 In this case the trustee sold the equipment owned by Kors for $1,100,000. Sections 544(a)(1) and 551 put the trustee in the shoes of the Bank with respect to the Bank's unperfected security interest in the proceeds of Kors equipment and machinery. Hence, the trustee properly preserved the Bank's lien in the proceeds of the sale of Kors equipment which was financed by the Bank. It was improper, however, for the trustee to be subrogated to the Bank's rights with respect to the subordination agreement among RIDC, SBIC, and the Bank. Under Vermont law, subordination agreements will be enforced only between those parties entitled to priority who enter such an agreement. Uniform Law Comment, Vt.Stat.Ann. tit. 9A Sec. 9-316 (1966) ("Only a person entitled to a priority may make such an agreement: his rights cannot be adversely affected by an agreement to which he is not a party.") Thus under Vermont law, the trustee would not accede to the benefits of the subordination agreement because Kors was not a part of that agreement. Moreover, the trustee was vested only with the rights the Bank had against Kors. In re Gamble, 14 F.2d at 848. The Bank's rights against Kors existed pursuant to the Security Agreement for the Rextrusion equipment. The Bank's subordination rights existed against SBIC and RIDC, not Kors. Hence, since the Bank had no rights as against Kors with respect to the subordination agreement, the trustee was not vested with any of the Bank's rights in that agreement.
 
 
 23
 At the same time, the Bank's rights with respect to its unperfected security interest on Kors' collateral were separate and distinct from its rights under the subordination agreement among the lenders. Therefore, the trustee, acting under Secs. 544(a)(1) and 551 obtained only those rights and powers derived from the unperfected security interest against Kors in the collateral and did not acquire the rights of the Bank under the subordination agreement. Consequently, the bankruptcy court should have enforced the subordination agreement according to the terms of the parties to that agreement. In re Credit Industrial, 366 F.2d at 410.
 
 
 24
 We therefore affirm the judgment of the district court.
 
 
 
 [1]
 Pursuant to a lease agreement ("Lease Agreement") dated June 19, 1978, RIDC leased this machinery to Kors for a period of ten years and granted Kors the option to purchase the leased equipment at the end of the term for a nominal charge. The Lease Agreement was subject and subordinate to the Security Agreement given to the Howard Bank by RIDC and Kors for the principal amount of $1,510,000. No financing statement was filed by RIDC with respect to the Lease Agreement
 Although RIDC was to hold legal title to the leasehold, Kors was to be the equitable or beneficial owner. Kors negotiated the purchase of the Rextrusion machinery and the Rextrusion machinery was delivered directly to Kors under documents of sale listing Kors as buyer. The bankruptcy court found that the lease was a capital lease intended to have effect as a security rather than an operating lease. Further, the bankruptcy court found that Kors was the owner of the collateral. 50 B.R. 874, 879 (Bankr.D.Vt.1985).
 
 
 [2]
 Additional funds were loaned to Kors by SBIC on November 26, 1979, March 10, 1980, and August 1, 1980. The total amount loaned to Kors by SBIC is $1,000,000
 
 
 [3]
 In late 1979, the Bank filed additional financing statements, signed only by RIDC, for additional loans of $176,000 and $750,000. On December 20, 1979, SBIC filed and signed a statement of subordination with regard to the $750,000 loan wherein RIDC was listed as the debtor. Thus, both the financing statement and the subordination statement filed by SBIC ackowledged that SBIC's security interest was subordinate to the Bank's
 
 
 [4]
 Section 551 states:
 Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate.
 11 U.S.C. Sec. 551 (1982).
 
 
 [5]
 Section 510(a) states, in pertinent part:
 A subordination agreement is enforceable ... to the same extent that such agreement is enforceable under applicable nonbankruptcy law.
 11 U.S.C. Sec. 510(a) (1982).
 
 
 [6]
 Indeed, in a Chapter 7 liquidation, the Code specifically authorizes the distribution of assets to enforce a subordination agreement before distribution of funds to any priority creditors of the estate. See 11 U.S.C. Sec. 726 (1982 & Supp. III 1985)