**In re Thomas GALVIN and Beverly Galvin, Debtors.**

**Bankruptcy No. 90–00237.**

United States Bankruptcy Court, D. Vermont.

Nov. 5, 1990.

D. Conard of Miller, Eggleston & Rosenberg, Ltd., Burlington, Vt., for Vermont Federal Bank, FSB.

T. Maikoff, Rutland, Vt., trustee, pro se.

M. Palmer, Glinka & Palmer, Middlebury, Vt., for Thomas Galvin and Beverly Galvin.

11 USC § 541 DETERMINATION[1]

FRANCIS G. CONRAD, Bankruptcy Judge.

Bank seeks a determination whether post-petition rent paid to it from Debtors'

---

1. We have jurisdiction to hear this contested matter under 28 U.S.C. § 1334(b) and the General Reference to this Court by the United States District Court for the District of Vermont. This is a core matter under 28 U.S.C. § 157(b)(2)(A), (E), and (K). This Memorandum of Decision constitutes findings of fact and conclusions of law under F.R.Civ.P. 52 as made applicable by Rules of Practice and Procedure in Bankruptcy Rule 7052.

tenant under a lease assigned to Bank pre-petition and after a default on a commercial mortgage is not property of Debtors' Chapter 13 bankruptcy estate under 11 U.S.C. § 541(a).[2] An issue of first impression in this District, we hold Vermont's Supreme Court would find an absolute assignment of rent under the operative documents and facts. Thus, we conclude the post-petition rent is not part of Debtors' bankruptcy estate.

### FACTS

On October 21, 1986, Debtors signed a purchase money first mortgage on a commercial building and land as security for a $60,000 promissory note to Bank. Pertinent terms of the mortgage include:

9. *Remedies Cumulative.* All remedies provided in this Mortgage are distinct and cumulative to any other right or remedy under this Mortgage or afford (sic) by law or equity and may be exercised concurrently, independently or successively.

.    .    .    .    .

15. *Receiver.* Upon acceleration ... Mortgagee ... shall be entitled to enter upon, take possession of and manage the Premises ... or any part thereof, on whatever terms they, in their sole discretion, deem advisable, and to collect said rents and profits of the Premises including those past due. All rents and profits collected by Mortgagee ... shall be applied first to payment of the costs of management of the Premises and collection of rents and profits, including ... reasonable attorneys' fees. Mortgagee and the receiver shall be liable to account only for those rents and profits actually received. In connection herewith and as additional security hereunder, Mortgagor hereby assigns to Mortgagee the rents of the Premises and all profits derived from any and all uses of the Premises subject

to the rights of any holder of a mortgage having priority over this Mortgage, if any.

Debtors also granted Bank a "Collateral Assignment of Lease," on October 21, 1986, in the premises subject to the mortgage. The Collateral Assignment of Lease assigned Debtors' lease with the United States Postal Service (Tenant) to Bank. Pertinent terms of the Collateral Assignment of Lease include:

[Bank] is the holder of the Mortgage Deed secured thereby, now, therefore, further to secure said indebtedness, [Debtors], hereby sell, assign, transfer, let, demise and set over unto [Bank] the possession of all the rents, issues and profits now due and which may hereafter become due under or by virtue of any lease, whether written or verbal ... for the use or occupancy of any part of the premises ... it being the intention hereby to establish an absolute transfer and assignment of all such leases and agreements and all the avails thereunder unto the assignee herein....

This assignment shall be operative in the event of a default in the payment of the principal or interest secured by the Mortgage Deed, or in the event of a breach of any· of covenants in the Mortgage Deed contained.

On January 17, 1990, Bank notified Debtors that they were in default of the mortgage. Bank sent a notice of acceleration to Debtors on February 1, 1990. On February 5, 1990, Bank notified Tenant of Debtors' default and directed Tenant to pay rent under the lease to Bank. Tenant has since paid rent to Bank.

On May 4, 1990, Debtors filed their Chapter 13 petition under 11 U.S.C. §§ 101, *et seq.* On July 20, 1990, Bank filed an objection to Debtors' Chapter 13 plan on the

---

**2.** 11 U.S.C. § 541(a)(1), **Property of the estate,** provides:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

basis that Debtors' plan did not provide the full amount of Bank's claim.

We heard Bank's objection during a continued confirmation hearing on Debtors' Chapter 13 plan. At the hearing, Debtors agreed *inter alia*, to amend their Chapter 13 plan to provide for the full amount due Bank; however, Debtors' amended Chapter 13 plan deducts from the monthly payment to Bank the amount of rent Bank receives from Tenant. Bank objected to this treatment under the Chapter 13 plan. We directed briefs on the issue of whether postpetition rents belonged to Debtors' estate or to Bank. The matter was taken under advisement.

## DISCUSSION

■ The substantive nature of a creditor's and debtor's property interest is defined by state law.

Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interest should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both State and federal courts within a state serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.'

*Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct 914, 917–18, 59 L.Ed.2d 136, 141–42 (1979) (citing, *Lewis v. Manufacturers National Bank*, 364 U.S. 603, 609, 81 S.Ct 347, 350, 5 L.Ed.2d 323, 327 (1961)). *Accord, Kors, Inc. v. Howard Bank*, 819 F.2d 19, 22, 16 B.C.D. 162, 164 (2d Cir. 1987); *Robinson v. U.S. Small Business Administration (In re Catamount Dyers, Inc.)*, 50 B.R. 788, 789 (Bkrtcy.D.Vt.1985); *Purcell v. STN Enterprises, Inc. (In re*

*STN Enterprises, Inc.)*, 47 B.R. 315, 318 (Bkrtcy.D.Vt.1985).

As *Butner* noted,[3] a majority of States follow the general rule that the mortgagee is not entitled to rents and profits of the mortgaged premises until possession is taken. *See, e.g., Freedman's Saving Co. v. Shepherd*, 127 U.S. 494, 502, 8 S.Ct 1250, 1254, 32 L.Ed. 163 (1888); *In re Brose*, 254 F. 664, 666 (2d Cir.1918) (New York law); *Hardee v. American Security & Trust Co.*, 77 F.2d 382 (D.C.Cir.1935) *cert. denied*, 296 U.S. 595, 56 S.Ct 110, 80 L.Ed. 421 (1935) (District of Columbia law); *In re Clark Realty Co.*, 234 F. 576, 582 (7th Cir.1916); *In re 1301 Connecticut Ave. Associates*, 117 B.R. 2, 7 (Bkrtcy.D.D.C. 1990) (District of Columbia law); *In re Ledgemere Land Corp.*, 116 B.R. 338, 341 (Bkrtcy.D.Mass.1990) (Massachusetts law, citing, *In re Prichard Plaza Associates Limited Partnership*, 84 B.R. 289, 297 (Bkrtcy.D.Mass.1988)).

In a minority of States, the mortgagee's right to rents and profits may be exercised immediately upon default either because the mortgagee is automatically entitled to possession of the property and to a security interest in the rents or because a provision in the mortgage deed or if a collateral document permits a mortgagee to take the rent upon notice of default and demand upon tenant. *See e.g., Equitable Mortgage Co. v. Fishman (In the Matter of Charles D. Stapp of Nevada, Inc.)*, 641 F.2d 737, 739 (9th Cir.1981) (the term assignment without the qualifying language of "as additional security" required a finding of an absolute assignment of rent that was effective upon default without possession); *Golden Enterprises, Inc. v. United States (In Matter of Golden Enterprises, Inc.)*, 566 F.2d 1207, 1210 (4th Cir.1977) (North Carolina law permits a mortgagee to take rents prior to foreclosure absent possession if there is a special provision which permits

---

**3.** *Butner* surveyed the various positions taken by States on the issue of whether a security interest in real property extends to rents and profits derived from debtor's real property, *id.*, 440 U.S. at 52–53, 99 S.Ct. at 916–17. It declined to reach the state law issue, in deference to the Circuit Court's view on this substantive issue, on

the policy ground that Federal Courts deal regularly with state law and "are in a better position than we to determine how local [State] courts would dispose of comparable issue." *Butner v. United States, supra*, 440 U.S. at 58, 99 S.Ct. at 919 (footnote omitted) (bracket supplied).

this action in the mortgage deed or other document) *aff'd on other grounds, Butner v. United States,* 440 U.S. 48, 99 S.Ct 914, 59 L.Ed.2d 136 (1979); *Great West Life Assurance Company v. Rothman (In the Matter of Ventura–Louise Properties),* 490 F.2d 1141, 1143 (9th Cir.1974) (California law); *Associated Co. v. Greenhut,* 66 F.2d 428, 429 (3d Cir.1933) *cert. denied,* 290 U.S. 695, 54 S.Ct. 131, 78 L.Ed. 598 (1933); *In re Bethesda Air Rights Limited Partnership,* 117 B.R. 202, 209 (Bkrtcy.D.Md. 1990) (Under Maryland law, mortgagee's notice to lessee of mortgagor's default and directing payments to designee was sufficient to end mortgagor's right to rents).

■ The issue is whether Vermont[4] follows the majority rule that the assignment of rent clauses contained in the mortgage and Collateral Assignment of Lease operate as a mere pledge of additional security and, upon mortgagor's default, the mortgagee is required to perfect its right to mortgagor's tenant's rent by taking physical possession of the premises; or, does Vermont follow the minority rule that the mortgagee is entitled to enforce its contractual clauses as an absolute assignment of rents upon notice of mortgagor's default and demand upon mortgagor's tenant.

We begin with an examination of the material terms from the operative documents. Upon Debtors' default, the mortgage requires Bank to enter and take possession of the premises before it may collect rent from Debtors' Tenant. "Upon acceleration herein … Mortgagee … shall be entitled to enter upon, take possession … and to collect said rents and profits of the Premises including those past due.…" Moreover, the mortgage speaks of the assignment of rent as additional security rather than an absolute assignment. "In connection herewith and *as additional se-*

*curity* hereunder, Mortgagor hereby assigns to Mortgagee the rents of the Premises.…" (Emphasis supplied). Thus, the mortgage expresses the assignment of rents as additional security and not as an absolute assignment of rents.

The Collateral Assignment of Lease expresses two conflicting intentions, *i.e.,* namely, the assignment of rent is additional security and is absolute. *"[F]urther to secure said indebtedness,* [Debtors], hereby sell, assign, transfer, let, demise and set over unto [Bank] the possession of all the rents, issues and profits now due and which may hereafter become due under or by virtue of any lease, whether written or verbal … *it being the intention hereby to establish an absolute transfer and assignment of all such leases and agreements and all the avails thereunder unto the assignee.…"* (Emphasis supplied). Unlike the mortgage, the Collateral Assignment of Lease transfers possession of the rents in the event of a default. The Collateral Assignment of Lease, however, does not express an intention to transfer actual possession of the premises upon default.

Factually, Bank declared and gave Debtors' notice of default for condition broken under the mortgage. Bank demanded and received rent payments directly from Debtor's Tenant. These facts together with the terms of the Collateral Assignment of Lease are dispositive of this matter.

The Vermont Supreme Court has not yet spoken on the precise issue before us, but in several mortgagor/mortgagee cases with tenants originally holding under a mortgagor it provides us with some guidance.

In *Babcock v. Kennedy,* 1 Vt. 457 (1829), the Vermont Supreme Court held:

> directed by § 304. But, § 304 expressly states that the failure to follow the formalities of § 304 does not void the assignment between the assignor and assignee. There was also no evidence that Debtors recorded the Collateral Assignment of Lease in the land records as required under 27 Vt.Stat.Ann. § 409. The failure to record under § 409 still operates to pass the assignor's interest to the assignee. *Spaulding v. Fletcher,* 124 Vt. 318, 323, 205 A.2d 556 (1964).

**4.** There is no statutory guidance from Vermont's legislature on the mortgagee's perfection of an assignment of commercial rents as security. Vermont has an execution statute, however. The Collateral Assignment of Lease meets the requirements of 27 Vt.Stat.Ann. § 304 that an assignment of lease of lands meet the formalities required for the execution of a deed. There is no evidence that Bank recorded the Collateral Assignment of Lease in the land records as

As soon as there is a breach of the condition by non-payment, the mortgagee has a right to the possession of the mortgaged premises ... (and) if such damages are recovered and collected without any decree of foreclosure, the mortgagee must account for same as part payment of the mortgage money ... (and) the mortgagee might recover rents and property against the assignee of the mortgagor, after notice to quit; and, if no such notice, then, from the commencement of the action.

*Babcock v. Kennedy, id.,* at 461–462.

In *Babcock,* a mortgagor's tenant sued the mortgagee for an accounting and what would in today's modern practice be called a declaratory judgment action about the tenant's liability to the mortgagee. The Court held that the mortgagee calling upon the tenant, after a breach of condition, and giving the tenant notice was tantamount to a notice to quit. From that time forward, the mortgagee had a right to receive the rents and profits. Moreover, the mortgagor could support no claim for the rents and profits for the very same reason that they now belonged to the mortgagee. After reciting this general principle, however, the Court found that the tenant had not attorned to the mortgagee, thus finding the mortgagee not properly in possession. *Compare, Atkinson v. Burt, et al.,* 1 Aik. Rep. 329 (1862) (Mortgagee might recover rents and profits against the assignee of the mortgagor, after notice to quit, and if no such notice, then from the commencement of the ejectment action.).

The process of attornment, *i.e.,* lessee turns rent over to the lessor's mortgagee was recognized in *Kelly v. Clement National Bank,* 111 Vt. 65, 67–68, 10 A.2d 201 (1940):

The condition of the mortgage was broken. After condition is broken the mortgagee becomes at law the absolute owner of the property and is entitled to immediate possession, and may, without notice, enter upon the property and take possession thereof, if he can do so peaceably and unresisted.... When a lessee of the property in such case attorns to the mortgagee and becomes his tenant, as was done in this case when the tenant after notice to do so paid his rent to the defendant [mortgagee], there is a constructive eviction which extinguishes his liability to the mortgagor, and thereafter he can be considered as holding possession of the property for the mortgagee ...

The defendant [mortgagee] had the same right after the decree of foreclosure, as before, to take possession of the mortgage property and to get the plaintiff [mortgagor's tenant] to attorn to it, and it was liable to account to the plaintiff [mortgagor] upon the mortgage debt for the rents received before the decree finally became absolute.

*Kelly v. Clement National Bank, supra,* 111 Vt. at 67–68, 10 A.2d 201 (citations omitted). *Accord, Mason v. Gray,* 36 Vt. 308, 312 (1863); *Stedman v. Gassett,* 18 Vt. 346 (1846) (Notice to a mortgagor's tenant to tender rent to the mortgagee; the tenant continuing in possession; and not objecting to mortgagee's demand, amounts to a constructive eviction and an implied landlord-tenant contract between the mortgagee and tenant.). But until the right is exercised, the mortgagor retains lawful possession of the property. *Rassman v. American Fidelity Company,* 142 Vt. 623, 460 A.2d 461 (1983).

The mortgagee holds title only for the purpose of security, and the burden is on the mortgagee to show anything done to enlarge that title. *Sowles & Sowles v. Minot, et al.,* 82 Vt. 344, 73 A. 1025 (1909).

We conclude Bank has an absolute assignment of rent despite Bank's failure to take physical possession of the premises and despite the rent's status under the mortgage as additional security. We reach this conclusion because of the occurrence of several conditions. First, Debtors' prepetition default triggered Debtors' Collateral Assignment of Lease which gives Bank the right to demand and collect rent directly from Debtors' Tenant. We make this holding in spite of the "security" language because it is patent the parties intended to establish an absolute transfer

and assignment of the listed leases if there was a default event. Second, Bank gave notice of Debtors' default and demanded Debtors' Tenant pay rent directly to Bank. Debtors' Tenant did in fact attorn the rent to Bank. Under these circumstances, a Vermont State Court would view Bank's Collateral Assignment of Lease together with the attornment as constructive eviction, making actual possession by Bank of the premises an unnecessary act. Having lost any legal right to the rent, the rent is not property of Debtors' estate.

Although we conclude Bank was and is entitled to collect rent directly from Debtors' Tenant and the rent is not property of Debtors' estate, we nevertheless conclude Debtors' plan properly deducted the amount collected by Bank because the attornment of rent to Bank renders Bank liable to account to Debtors until foreclosure and expiration of Debtors' equity of redemption.

An appropriate Order will be entered.