**In re SALEM PLAZA ASSOCIATES, Debtor.**

**Bankruptcy No. 91–B–15884 (FGC).**

United States Bankruptcy Court, S.D. New York.

Jan. 17, 1992.

---

**754**

R.R. Leinwand of Robinson Brog Leinwand Reich Genovese & Gluck, P.C., New York City, for debtor, Salem Plaza Associates.

L.R. Bailey, Jr., of Walker & Bailey, New York City, for secured creditor Resolution Trust Corp. (RTC).

FRANCIS G. CONRAD, Bankruptcy Judge.*

Debtor has applied for an order[1] (a) declaring that RTC, receiver for First Federal Savings Bank, is not entitled to receive postpetition rents from Debtor's Minot, North Dakota, shopping center under an assignment of rents; and (b) authorizing Debtor to use such rents to pay the expenses of operating the shopping center. Because both the operative language of the parties' agreement and North Dakota law require us to hold that the assignment was not absolute, and therefore did not cut off all of Debtor's interest in the rents, we grant Debtor the relief requested.

Debtor borrowed $1.485 million from Crest Mortgage Company on Feb. 27, 1986. Security for the debt included a mortgage and two assignments of rent set out in two different loan documents. Although both assignments relate to the same collateral, one is clearly a conditional grant of additional security, while the other is arguably an absolute assignment which terminates Debtor's interest in the rents upon default and demand by RTC. *In re Fluge,* 57 B.R. 451, 454 (Bkrtcy.D.N.D.1985); *In re Galvin,* 120 B.R. 767, 771–72 (Bkrtcy.D.Vt. 1990). The loan documents provide that they are to be construed under North Dakota law. After the transaction, Crest assigned its rights and interests to First Federal Savings Bank. RTC was appointed receiver of First Federal in September 1991.

Debtor defaulted when it failed to pay the entire remaining principal balance and accrued interest on March 1, 1991, as required by the note. RTC, by notice dated Nov. 15, 1991, warned the Debtor that it would invoke its rights under the two assignments of rents if the default was not cured within 10 days. Debtor failed to cure, and, faced with the loss of rents, filed its voluntary Chapter 11 petition on Dec. 26, 1991. To date, no tenants have attorned to RTC. The secured debt owed to RTC was approximately $1.4 million at the time of filing. Debtor represents that the value of the property, possession of which remains in the Debtor, exceeds $2.3 million.

Before we can reach its motion to use cash collateral under § 363(c),[2] Debtor must establish that neither assignment is absolute. If either is absolute, and is enforceable under North Dakota law, we lack authority under § 363 to authorize the

---

* Sitting by special designation.

1. Our subject matter jurisdiction over this matter arises under 28 U.S.C. § 1334(b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core matter under 28 U.S.C. § 157(b)(2)(A), (K), and (M). This Memorandum of Decision constitutes findings of fact and conclusions of law under F.R.Civ.P. 52, as made applicable to this proceeding by F.R.Bkrtcy.P. 7052.

2. All statutory references are to Title 11 of the United States Code unless otherwise specifically indicated.

Debtor to use the rents. Section 363(c)(2) provides:

> The trustee may not use, sell, or lease cash collateral ... unless—
>> (A) each entity that has an interest in such cash collateral consents; or
>> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

"Cash collateral" is defined by § 363(a) to mean

> cash ... or ... cash equivalents whenever acquired *in which the estate and an entity other than the estate have an interest* and includes the ... rents ... of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title. (Emphasis added.)

If the assignment is absolute, § 363 does not apply because the Debtor, prepetition, "[h]aving lost any legal right to the rent, the rent is not property of the estate," *In re Galvin*, supra, 120 B.R. at 772, and is therefore not cash collateral.

Several alternative theories are offered by Debtor to circumvent this obstacle. While conceding that RTC has a security interest in the rents, Debtor argues that (1) the language of the parties' agreement makes both assignments conditional grants of additional security, and not absolute assignments; (2) under North Dakota law, the assignment did not convey to RTC an absolute right to the rents; (3) RTC is a "custodian" within the meaning of § 543 and is thus required to relinquish control of the rents; and (4) § 503(c) authorizes it to collect postpetition rents and pay operating costs to preserve the estate. We address only the first two arguments, because we hold (a) that the language used makes both assignments conditional; and (b) the ineluctable impact of a peculiar North Dakota statute is to preclude creation of an absolute assignment of rents as a part of a mortgage loan transaction.

■ The loan document entitled Mortgage, Security Agreement and Assignment of Leases and Rents provides, in pertinent part, as follows:

> [T]o secure the payment of the Note and certain other indebtedness ... Mortgagor does hereby grant, bargain, sell, convey, mortgage and warrant unto Mortgagee ... all ... Rents ...; reserving only the right to Mortgagor ... to collect the same so long as there is no Event of Default ... which shall have occurred and be continuing.
>
> ....
>
> This Mortgage constitutes a "security agreement" as that term is defined in the Uniform Commercial Code as enacted in the state wherein the Premises are located ... with respect to, among other things, ... the Rents and any part thereof, and creates a security interest in Mortgagee in ... the Rents.

The quoted language clearly indicates that this assignment was intended as additional security, and was not an absolute assignment. The factors which persuade us that this is the case are the condition that the default "be continuing" and the express language denominating it a "security agreement" under the Uniform Commercial Code.

Whether the assignment created by the loan document entitled First Priority Assignment of Leases and Rents is absolute, however, is a closer question. It provides that,

> as further and additional security ..., [Debtor] does hereby sell, assign, transfer, set over and grant to Assignee, its successors, successors-in-title and assigns, (i) all rents, issues and profits which shall hereafter be realized, become due or be paid in connection with the operation and use of the premises....
>
> ....
>
> [Debtor] does hereby specifically authorize and instruct each and every present and future lessee or tenant of the whole or any part of the premises to pay all rental to Assignee upon receipt of demand from Assignee to so pay the same.
>
> ....

Notwithstanding anything herein to the contrary, it is understood and agreed that ... although this Assignment shall be effective as of the date hereof, subject to any applicable notice and opportunity to cure, no right or power granted hereunder shall be exercised unless and until a default shall occur in the payment of interest and/or principal due under the Note....

These features suggest an absolute assignment of rent, "despite [RTC's] failure to take physical possession of the premises and despite the rent's status under the mortgage as additional security," because: (1) the quoted language suggests that the parties' intention was to create an absolute assignment at the loan closing which could be exercised in the event of a default; and (2) Debtor's prepetition default triggered RTC's right to demand and collect rent directly from Debtor's tenants. See, *In re Galvin*, supra, 120 B.R. at 771–72.

Upon close scrutiny, however, conflicting signals emerge, suggesting that the assignment was not intended to be absolute. The general, apparently absolute assignment is expressly made "subject to" terms and conditions which suggest a more limited intent. RTC's authority to use the rents after a default triggers its rights to them is narrowly proscribed, covering only those matters which protect its security and facilitate repayment of the debt:

Assignee is hereby granted full power and authority to use and apply said rents, losses or rebates, damages and abatements to the payment of premiums on ... policies of insurance; to the payment of any and all indebtedness and liability of [Debtor], whether now existing or hereafter to exist; to the purchase of such furniture as may be deemed necessary or advisable by [RTC]; to the payment of all expenses in the care and management of the premises, including such repairs, alterations, additions and improvements to the premises and the furniture as may be deemed necessary or advisable by [RTC]; to the payment of attorneys' fees, court costs, labor, charges and expenses incurred in connection with any and all things which [RTC] may do or cause to be done by virtue hereof; to the payment of the indebtedness secured hereby; or to any of the foregoing.

Completely missing is any authority for RTC to keep the money for its own use and enjoyment once the obligations of the Debtor are satisfied. Similarly, Debtor promises not to reassign the rents "at any time during the life of these presents," and not to remove furniture "[u]ntil such time as the indebtedness secured hereby is paid in full." These provisions make the assignment a conditional assignment for security, and not an absolute assignment which, upon default, divests the Debtor of every interest in the rents. Thus in each case, Debtor retained an interest in the rents which, under § 541,[3] passed into the estate.

 As an alternative basis for our holding, we look to North Dakota law to determine what the parties' rights would be had they in fact entered into an absolute assignment of rents.

Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy." *Lewis v. Manufacturers National Bank*, 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323. The justifications for application of state law are not limited to ownership interests; they apply with equal force to

**3.** Section 541 provides, in pertinent part:
(a) The commencement of a case ... creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) ... all legal or equitable interests of the debtor in property as of the commencement of the case.

security interests, including the interest of a mortgagee in rents earned by mortgaged property.

*Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

Even had the parties agreed to an absolute assignment of rents, it would not be enforceable under North Dakota law. N.D.Cent.Code § 28–24–11 provides, with an exception not relevant here:

> The debtor under an execution or foreclosure sale of the debtor's property is entitled to the possession, rents, use, and benefit of the property sold from the date of the sale until the expiration of redemption. . . .

The Supreme Court of North Dakota has held that, as a result of § 28–24–11, the mortgagor and the mortgagee "at the time of the execution of the mortgage, and as a part of the same transaction, . . . cannot, by contract, deprive the mortgagor of his statutory right to the rents and profits or the use and occupation of the mortgage property during the year of redemption." *Fargo Building & Loan Association v. Rice,* 66 N.D. 100, 262 N.W. 345, 350 (1935). That decision was reaffirmed by *Skinner v. American State Bank,* 189 N.W.2d 665, 670 (N.D.1971). Ironically, both opinions hold that, as here, a mortgagee who is not in possession of the premises is nevertheless entitled to the rents under an assignment where there has been no foreclosure. *Id.,* at 670; *Fargo, supra,* 262 N.W. at 350. See also, *East Grand Forks Federal Savings and Loan Association v. Mueller,* 198 N.W.2d 124, 127–28 (N.D. 1972) (where no foreclosure has been commenced, an assignment of rents given by the mortgagor as additional security will be enforced even where the mortgagee is not in possession). This statutory rule is, as the North Dakota Supreme Court has acknowledged, "contrary to the current of authority in this country," *Skinner, supra,* 189 N.W.2d at 668; see also, *In re Fluge,* 57 B.R. 451, 454 (Bkrtcy.D.N.D.1985 (North Dakota has declined to follow majority position), and is at odds both with the majority and minority views of a mortgagee's right to rents.

In most States, the mortgagee's right to rents is dependent upon his taking actual or construction possession of the property by means of a foreclosure, the appointment of a receiver for his benefit, or some similar legal proceeding.

*Butner, supra,* 440 U.S. at 52–53, 99 S.Ct. at 916–17. *E.g., Galvin, supra,* 120 B.R. at 769 ("a majority of States follow the general rule that the mortgagee is not entitled to rents and profits of the mortgaged premises until possession is taken"). Under this view, an assignment of rent "operate[s] as a mere pledge of additional security," *id.,* at 770. Under the minority rule, "the mortgagee is entitled to enforce its contractual clauses as an absolute assignment of rents upon notice of mortgagor's default and demand upon mortgagor's tenant," *id.,* because the Debtor has been divested of its interest in the rents and nothing flows into the estate. *Id.,* at 772. Although North Dakota permits enforcement of an assignment prior to possession by the mortgagee, the statute precludes an absolute assignment by reserving to the mortgagor the exclusive right to collect rents during the redemption period. Indeed, the Bankruptcy Court for the District of North Dakota has held that under the State's mortgage law a mortgagee "only holds a lien on the subject property and disputed rent proceeds, and does not hold legal title." *In re Fluge, supra,* 57 B.R. at 454. Thus, we hold that Debtor does have an interest in the rents which secure the debt to RTC.

> Section 552(b) of the Bankruptcy Code provides that when a security agreement is entered into prior to commencement of the case, and the security interest created by that agreement extends to property of the debtor, and rent therefrom, then the security interest extends to rents acquired by the estate after commencement of the estate to the extent provided by such security agreement and by applicable non-bankruptcy law. . . . *Id.*

Postpetition enforcement of such a security interest, however, is expressly made subject to the opportunity of a trustee or debtor-in-possession to use cash collateral

under certain conditions as provided by § 363. § 552(b). Because RTC does not consent, § 363(c)(2)(A), we are required to condition Debtor's use of RTC's cash collateral "as is necessary to provide adequate protection of such interest." § 363(e). Section 361 provides:

When adequate protection is required ... of an interest of an entity in property, such adequate protection may be provided by—

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the ... use ... under section 363 ... results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

Debtor's limited application seeks only to use RTC's cash collateral to pay necessary operating expenses of the shopping center as set forth in a budget attached to its motion. RTC itself would be obligated to pay necessary operating expenses under the rent assignments. Debtor's representation that the value of the shopping center, on which RTC holds the first mortgage as additional security, substantially exceeds its debt to RTC was undisputed. Allowing the Debtor to use rents only for necessary operating expenses will not diminish the value of RTC's interest in future rents, but will preserve the base that generates the income stream.

We find that, in these circumstances, RTC is adequately protected. Accordingly, Debtor is authorized to use cash collateral only to pay necessary operating expenses as set forth in the budget attached to its motion. All rents received in excess of these expenses shall be placed in an interest-bearing escrow account. This holding is without prejudice to the right of either party to apply for a modification of Debtor's authority upon a proper showing of need or prejudice. Debtor shall settle an order in accordance with the terms of this opinion.